

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 24, 2017**

_____
**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL TIMOTHY HANCOCK and | § | CASE NO. 17-50222-rlj13 |
| PAULA ANN HANCOCK, | § | |
| | § | |
| Debtors. | § | |

## MEMORANDUM OPINION AND ORDER

On October 18, 2017, hearing was jointly held on the motion of Michael and Paula

Hancock, the debtors here, seeking a continuation of the automatic stay in light of their having

had a prior case dismissed within one year of the filing of the present case, and the motion of

Corbin Residential Properties, LLC ("Corbin") seeking relief from the automatic stay and to

prohibit the use of cash collateral. Corbin also opposes the debtors' motion for a continuation

of the automatic stay.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This

matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (M).

1

I.

The Hancocks are indebted to Corbin under a note and deed of trust dated November 30, 2015, under which the Hancocks acquired a 10.27-acre tract, with improvements, from Corbin. The transaction is a bit more complicated than that, however. The note and lien held by Corbin are described as a "wraparound" mortgage and note, meaning Corbin sold the property to the Hancocks subject to a prior deed of trust lien under which it is obligated. Rather than a straight seller-financed transaction, Corbin was actually assigned the note and lien by Texas Mortgage Capital Corporation. (The role of Texas Mortgage Capital Corporation is not entirely clear from the evidence.) Yet another entity, SecureNet Loan Services, LLC, services the loan. The first and prior lien is held by City Bank; Corbin is obligated on a note to City Bank in the original principal amount of $135,000. The original principal amount of the Hancocks' note is $158,917.

On the 10.27-acre tract is a double-wide trailer home the Hancocks use as their residence, a smaller rent house, and a barn with adjacent stables and tack room.

The Hancocks are notoriously behind on their payments to Corbin; they have struggled to make payments from the time they purchased the property. The payments on the note are $1,278.68 per month. In the almost two years since they purchased the property, the Hancocks have made only two full payments, along with several partial payments. They have issued multiple bad checks for payments, as well. As a result of the payment issues, Corbin began foreclosure proceedings in January 2017. The Hancocks filed a prior chapter 13 case to stop the foreclosure. The Hancocks were, however, unable to make the chapter 13 plan payments, and their prior case was dismissed on July 12, 2017. Corbin began a second foreclosure in August 2017, which then triggered the Hancocks' present bankruptcy filing on September 1,

2017. This case, like the prior case, is also filed under chapter 13 as the Hancocks' primary goal is to save their homestead.

The Hancocks submit that their circumstances have now changed for the better. Mr. Hancock was previously self-employed under a sole proprietorship, 4G Saddle & Boot Repair, in which he made and repaired leather goods—shoes, boots, saddles, and other like products. He is now employed by Elkhorn Construction which, he says, pays more and affords him the financial stability needed to make payments under a chapter 13 plan.

With attorneys' fees and the accrual of interest, Corbin's claim is now just over $182,000. The past due arrearages on the claim are approximately $30,000. Dan Corbin testified that he pays City Bank $1,060 per month on the first mortgage. The Hancocks' failures to pay him have caused him hardships. He has had to put-off maintenance and repairs on his own home and has made other personal sacrifices, such as cancelling a planned vacation.

Mr. Hancock testified that the 10.27 acres is, in his opinion, worth over $200,000; Mr. Corbin believes it has a value of approximately $190,000. So, they both at least agree that there is some, albeit minimal, equity in the property. The Hancocks have made improvements to the property—they cleaned and cleared the grounds, they put-in new flooring in both their double-wide residence and the rent house, and they replaced the air conditioning and septic system in the rent house.

Mr. Hancock testified that he makes $16.00 per hour with Elkhorn, and he works at least 50 hours per week. He said that Elkhorn is in the "pipeline business." He further testified that his wife, Paula Hancock, is a salaried employee doing bookkeeping-type work for a CPA; he said that she makes approximately $2,000 per month. As with many, if not most, chapter 13 debtors, the long-term stability of the Hancocks' employment is a potential issue.

The Hancocks made their first chapter 13 plan payment here of $3,065.74.

In addition to the deed of trust lien on the property, Corbin holds a collateral assignment of rents from the property and its proceeds. The Hancocks are presently receiving $950.00 per month in rent from the rent house and an additional $200.00 per month in boarding fees for boarding horses. As indicated by its motion, Corbin does not consent to the Hancocks' use of the rental income and requests that the Court direct that they be prohibited from using the rental income.

## II.

As the Hancocks' prior bankruptcy case was dismissed within one year of the filing of the case here, the automatic stay terminates "with respect to the debtor[s]" on the thirtieth day after the filing here. 11 U.S.C. § 362(c)(3)(A). The Court may, after notice and hearing, extend the stay as to any or all creditors—"subject to such conditions" as the Court may impose—if the Hancocks demonstrate that they have filed this case in good faith. § 362(c)(3)(B). In assessing their good faith, the Court considers whether there has been a substantial change in their financial or personal affairs since the dismissal of their prior case and whether there is a reasonable likelihood that they can perform under a confirmed chapter 13 plan. § 362(c)(3)(C).

The Hancocks have an abysmal payment history with Corbin. They have twice resorted to bankruptcy and its basic protection—the automatic stay—to prevent Corbin from foreclosing the property. Mr. Corbin has attempted to work with the Hancocks but to no avail. As is apparent, he has suffered financial and personal hardships, and has incurred significant legal fees in connection with the matter.

But Mr. Hancock's situation appears, at least now, to have improved. He is no longer self-employed and now receives a regular paycheck. The long-term stability of his

4

employment, as with most new by-the-hour workers, remains to be seen. Mrs. Hancock is also employed and presently receives regular income. As for the property itself, both Mr. Corbin and Mr. Hancock testified that its condition is better now than it was when the Hancocks purchased it. The Hancocks should be able to make regular chapter 13 plan payments. This assumes, of course, that any proposal they make under a chapter 13 plan is reasonable and meets the requirements of chapter 13.

III.

In balancing the rights and interests of the parties here, and considering the policies of chapter 13, the Court will order as follows:

(1) The automatic stay as to Corbin and to the properties shall continue until December 1, 2017, at which time it will terminate. This allows Corbin to post the property for a foreclosure that would take place on the first Tuesday of January 2018, provided it has not then been barred by confirmation of a chapter 13 plan.

(2) The Hancocks are barred from spending the rental income—the rent and boarding fee income—and shall account for and turnover to the chapter 13 trustee all rental income that they are presently holding and shall receive hereafter. The chapter 13 trustee shall hold the rental income pending further order of the Court. (The parties may by agreement provide for either debtors' counsel or Corbin's counsel to hold the rental income in their respective trust accounts under the same conditions.)

(3) The automatic stay is hereby extended as to all other creditors.

SO ORDERED.

### End of Memorandum Opinion and Order ###